[Crim. No. 646. In Bank.—January 3, 1901.]

THE PEOPLE, Respondent, v. JACK BROOKS, Appellant.

CRIMINAL LAW—HOMICIDE—REVIEW UPON APPEAL—BILL OF EXCEPTIONS— RECITALS OF EVIDENCE NOT INTRODUCED.—Upon an appeal from a judgment of conviction of murder, recitals made in the bill of exceptions of the contents of a dying declaration of the deceased used on the preliminary examination, and of other evidence and facts stated by the judge when he pronounced sentence, which do not appear to constitute part of the evidence introduced at the trial, cannot be considered by this court.

Id.—Support of Verdict — Request for Help by Police Officer—
Murderous Pursuit of Deceased.—The evidence reviewed, and the
request of a police officer to the defendant for help from a sup-
posed present danger from the deceased held not sufficient to
justify the defendant in a murderous pursuit of the deceased,
the evidence of which supported the verdict of the jury.

Id.—Instructions—Refusal of Requests—Arrest—Rights of Citizen
Called to Aid Officer.—Where the instructions given fully in-
formed the jury as to the rights, duties, and immunities of
a citizen called upon to aid a peace officer in making an arrest,
the refusal of requested instructions upon that subject substan-
tially included in those given cannot be prejudicial to the de-
fendant.

Id.—Murder in Second Degree—Sentence—Imprisonment for Life.—
Under sections 190 and 671 of the Penal Code, a defendant con-
victed of murder in the second degree may be sentenced to im-
prisonment for life.

APPEAL from a judgment of the Superior Court of Fresno
County and from an order denying a new trial.  E. W. Risley,
Judge.

The facts are stated in the opinion of the court.

Lewis H. Smith, Frank H. Short, W. P. Thompson, W. D.
Tupper, and W. D. Crichton, for Appellant.

Tirey L. Ford, Attorney General, and A. A. Moore, Jr.,
Deputy Attorney General, for Respondent.

McFARLAND, J.—By the information the appellant Brooks
and one Tony Rice were jointly charged with the murder of
Don Donelly.  Brooks was tried separately and convicted of
murder in the second degree.  He appeals from the judgment
and from an order denying a motion for a new trial.

The record is in a very loose and unsatisfactory condition.
The bill of exceptions, after showing that certain witnesses
were examined at the trial and certain evidence taken, contains
a statement of the contents of a certain alleged dying declara-
tion of the deceased which was used at the preliminary exam-
ination before the magistrate, but the record does not show that
said declaration was introduced in evidence at the trial.  There
is also a statement of a recitation of certain evidence and facts
made by the judge at the time he pronounced sentence; but the

things which he recited do not appear among the evidence taken at the trial. Of course, this is a mere statement of what the judge said, but there is nothing to show that the evidence to which he alludes was introduced; and these things cannot be considered here. In determining this appeal we can consider only the evidence which the record shows to have been introduced.

The record, as we must consider it, presents only two contentions of appellant which need be noticed: 1. That the evidence is insufficient to sustain the verdict of guilty; and 2. That the court erred to appellant's prejudice in refusing to give certain instructions to the jury which appellant asked.

1. We cannot say that the evidence was insufficient to support the verdict. The main facts of the case are these: On the morning of June 27, 1899, shortly before daylight, appellant was in the Favorite Saloon, in the city of Fresno, where he was employed as a barkeeper, and after some conversation through the telephone, in the saloon, he went out and remained away about ten or fifteen minutes, when he returned. When he left the Favorite he went to another saloon across the street and in the immediate neighborhood called the Golden West, to which place he had been summoned through the telephone. He had there a whispered conversation with a Mr. Ardell, and after remaining in the Golden West a minute or two he went out of the side door behind certain "cribs" or houses of prostitution. That part of the city is known generally as Chinatown and is occupied to a great extent by prostitutes. It does not appear where he went immediately after leaving the Golden West, but, as before stated, in about ten or fifteen minutes he returned to the Favorite Saloon and appeared to be in a state of great excitement. He hurriedly went behind the bar and got a pistol and went to the rear door of the saloon. At that time Rice, who was a police officer and was in or at the threshold of the saloon, followed the appellant to the back door and said to him something like: "This is my business," or, "If there is going to be any shooting I will do it." Rice looked out of the glass door, and seeing the deceased, Donelly, with a pistol in his hand, went out and said to him, "Throw up your hands"; but Donelly immediately fired one shot, either at

Rice as the latter testified, or up into the air as another witness testified, and Rice then fired six shots at Donelly. Rice testified that his pistol being then empty he dropped and went into the saloon, and that as he dropped he called on appellant to "come and help him," and said, "My impression is that I said, 'Help me and shoot him, both.'" Appellant, who had gone out of the saloon with or closely behind Rice, immediately began to fire at Donelly, who retreated, and appellant following him fired six shots at him, which emptied his pistol. He then returned a short distance, and, meeting Ardell, got another pistol from the latter, and then again pursued the deceased for about four blocks and fired at him again at least twice. The last shot was near the residence of Mrs. Shober, who was awakened by the shots and who testified that she got up and saw Donelly running, and that about half a second after the last shot he threw up his hands and exclaimed, "Oh! My God!" He was found lying about a block from Mrs. Shober's house with the bullet hole in his body, which caused his death a few days afterward. He had been shot only once, and the wound was made by a 44-caliber Smith & Wesson pistol, and Rice testified that this was the kind of pistol with which he shot. It was in evidence that the pistol with which appellant fired the first six shots was a 41-caliber Colt, and it is claimed by appellant that there was proof that the pistol which he received from Ardell was a 41-caliber. The contentions of appellant are: 1. That the deceased must have been killed by a 44-caliber bullet from Rice's pistol, and could not have been shot by appellant because the latter had no pistol of that kind; and 2. That if appellant killed the deceased he was justified in so doing by the command of the police officer, Rice. As to the first contention, it is sufficient to say that appellant had more than one pistol, and that there was sufficient evidence to warrant the jury in finding that the deceased was killed by one of the last shots fired by appellant, although there was no positive evidence to the point that he had a 44-caliber pistol; the jury were not compelled to believe everything testified to by witnesses who were apparently his close friends. As to the second contention, it is enough to say that while it might be imagined, perhaps, that appellant pursued the fleeing Don-

elly and shot at him at every opportunity, solely through a high sense of duty imposed on him by Rice, still the facts amply warranted the jury in finding that he was actuated by a murderous design to kill him.   Indeed, what Rice said can hardly be construed as a request to arrest Donelly or to pursue him for that purpose.   Rice testified that while he himself was shooting at Donelly he supposed that the latter was still shooting at him, which was a mistake, as Donelly shot only once; and what he said to appellant when his own pistol had been emptied was apparently for the purpose of asking appellant to rescue him from his supposed present danger.   At all events, it was for the jury to say why appellant alone pursued the deceased so far, and from all the evidence they were justified in finding that he did so for the purpose of committing murder.

2. We do not think that appellant was at all prejudiced by the refusal of the court to give certain instructions asked by his counsel.   The court did, at the request of defendant, give to the jury some fourteen instructions, and these instructions, together with others given by the court of its own motion, correctly and fully stated the law applicable to the case; and these instructions were certainly very favorable to the appellant. We think that all of the instructions refused which were correct were substantially included in the instructions given.  The rejected instructions most insisted upon by appellant as correct refer to the right of a citizen to assist a police officer when called upon to make an arrest; but as to this matter the court instructed the jury at the request of the appellant as follows:

"A citizen must assist in the arrest of a person when called upon by any peace officer so to do, and when so called upon the law clothes such person or citizen with the rights and duties and immunities of such officer.

"While an officer, or citizen requested by an officer to assist in making an arrest must use as little violence as possible, if resisted he may use sufficient force to effect his purpose, even though it go to the extent of taking life.   Resisting arrest does not always constitute the use of physical force; a person may resist arrest by fleeing from an officer attempting to arrest him.

"If the jury believe from the evidence that the defendant had a right to believe, as a reasonable man, and did believe, that

the deceased had unlawfully shot at or mortally wounded the officer, Tony Rice, in resisting arrest, before giving pursuit and the firing of the fatal shot, then the defendant not only had the right, but it was his duty, to so pursue and arrest the deceased and use all necessary means of effecting his arrest."

Under these instructions the jury were fully informed as to the law on this subject, and the appellant was not prejudiced by the refusal of the court to give the instructions refused.

There is nothing in the point that the court had no authority to sentence the appellant to imprisonment for life. Section 671 of the Penal Code expressly provides that where the punishment is imprisonment for a term not less than any specified number of years, and no limit to the duration of the imprisonment is declared, the defendant may be sentenced to imprisonment during his natural life. There are no other points requiring notice.

The judgment and order appealed from are affirmed.

Temple, J., Henshaw, J., Van Dyke, J., Garoutte, J., Harrison, J., and Beatty, C. J., concurred.

Rehearing denied.