[Crim. No. 3900. Fifth Dist. Aug. 29, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
LEONARD ALLEN, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Ezra Hendon, Chief Assistant State Public Defender, Laurance S. Smith and Roy M. Dahlberg, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just, Charles J. James and Garrick W. Chock, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BROWN (G. A.), P. J.—Appellant, Leonard Allen, appeals from a judgment entered upon a jury verdict finding him guilty of receiving stolen property (Pen. Code, § 496). The trial court denied a pretrial motion to suppress.

The central issue to be decided is whether the police officer had probable cause to arrest appellant for violating Penal Code section 148, which in relevant part provides that "[e]very person who wilfully resists, *delays*, or obstructs any public officer, in the discharge or attempt to discharge any duty of his office, . . ." is guilty of a misdemeanor. (Italics added.) We hold that he did have probable cause and affirm.

FACTS

Officer Barron, the only witness who testified on this issue, stated that on October 2, 1977, he and Officer Morrill were on patrol in a marked police vehicle. At approximately 1 p.m., while Officer Barron was driving, he observed a group of 10 to 15 people standing around the trunk of a vehicle. The trunk lid of the car was open. Appellant was on one side of the vehicle with his hand on the trunk lid. The other individuals were facing him from the opposite side of the car looking into the trunk area.

Officer Barron could see into the trunk area. There appeared to be a pile of clothes, specifically jackets. One individual in the group was examining a nylon jacket which was draped over his arm and was enclosed in a clear plastic wrapper. The individual placed the jacket back in the trunk after having looked in the direction of the police car. At that time the police vehicle was approximately 20 yards from the rear of the vehicle. After the individual placed the jacket into the trunk he immediately began to walk off at a "high step." Almost simultaneously with the jacket's being placed in the trunk, appellant looked in the direction of the police vehicle. After doing so he immediately slammed the trunk lid of the vehicle closed and began to hurry away. The other individuals in the group also began to disperse.

Officer Barron thought that the jackets were new. The one jacket he had plainly seen was in a clear plastic wrapper. The ones in the trunk appeared to have the same type of wrapper. There was a large quantity of the jackets in the trunk.

Officer Barron was in the process of stopping his police car when appellant began walking away from the other vehicle. Appellant's manner of walking away was described as being "in a hurry" and "continuous looking over his shoulder back to us." At that point, instead of exiting the vehicle, the officers began to go after appellant in their police car. The officer described it as follows: "I pulled on through the parking lot to the south side of the business at which time I caught a glimpse of the defendant running at this time southbound on Arthur, at which time numerous subjects were pointing in the same direction, stating that he was running from us." Appellant ran into a residential area, and the officers began to search for him on foot. Appellant was found hiding underneath a table in some bushes beside a residence.

Upon making contact with appellant, Officer Barron arrested him for violating Penal Code section 148. Officer Barron had his gun drawn. Barron had him crawl out from under the bushes and then handcuffed him. He performed a pat-down search. A set of car keys was removed from appellant's pocket. The keys were removed because Officer Barron thought there was possibly stolen property in the vehicle. The keys were removed before any questioning.

Appellant was advised of his *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) rights, and Officer Barron questioned him in regard to the vehicle and the clothing. When asked why he had run away, appellant responded he was afraid, stating that there were traffic warrants out for his arrest. Officer Barron also questioned him in regard to the clothes he had seen in the trunk of the vehicle. Appellant responded he didn't know anything about a car or any clothes. After receiving that response, Officer Barron ran a warrant check. A check was also made on the license number of the vehicle. Officer Barron was informed there was a warrant for appellant's arrest for driving the vehicle. Officer Barron told appellant of the results of the warrant check. He then requestioned him in regard to the vehicle and the clothes. At that point appellant changed his story, stating he had purchased the coats "at the Tucker's Club" and had paid $2 apiece for them.

Officer Barron testified that the charge of Penal Code section 496 was not officially added until they had returned to the location of the vehicle and viewed the clothing. From Officer Barron's testimony it is also clear, however, that at the time he first confronted appellant on

Lorena Street he did so with the intent to initiate an investigation into the possibility that appellant was guilty of receiving stolen property.

After appellant had been taken into custody the officers and appellant proceeded back to the parking lot where the other vehicle was. At that time the trunk of the vehicle was opened. A total of 21 coats were found in the trunk. Upon seeing the coats appellant was formally arrested for receiving stolen property. He was then searched and a total of $226 in currency was found in his pockets. Appellant stated that $162 of the money had been received from selling the coats and that the remainder, $64, was his own personal money. The only other item seized was a white ice dispenser. It was retrieved from the trunk of the car. The coats which were seized were new and were wrapped in clear plastic. When asked about them again appellant responded that he was selling them for $5 apiece. Appellant also reiterated that he had paid $2 for each coat, stating that he had gotten a "special price."

### DISCUSSION

The issue is narrowed by the obvious conclusion that the recited facts furnished the officer with adequate grounds to effect a temporary detention for questioning or other limited investigation under the criteria prescribed by *In re Tony C.* (1978) 21 Cal.3d 888, 892 [148 Cal.Rptr. 366, 582 P.2d 957]. Indeed appellant makes no contention to the contrary.

Appellant argues only that the arrest for violation of Penal Code section 148 was unauthorized and that the subsequent events produced poisoned fruit of an illegal arrest. Appellant appears to concede that if the initial arrest was valid, then the events which followed, including the questioning, the opening of the trunk, and the observations of the officer, were not illegal and produced lawfully procured evidence. Independently we have analyzed the issue and have concluded that there was no illegally seized evidence if the initial arrest was valid.

■ Turning to the core issue, we first note that the language of the California statute (Pen. Code, § 148), unlike any others our research has turned up, uses the word "delays" in addition to "resists" and "obstructs." Since the officer had the legal right, indeed duty, (see *In re Tony C., supra,* 21 Cal.3d 888, 894) to detain appellant, appellant, if he was aware of the officer's desire, had the concomitant duty to permit himself to be detained. (Cf., Pen. Code, § 834a.) Therefore, on the face

of the statute it would appear that the physical activity that appellant engaged in, flight and concealment, which *delayed* the officer's performance of his official duty, violated the statute.

An American Law Report annotation ((1972) 44 A.L.R.3d 1018), entitled Crimes—Obstructing or Resisting Officers, under the subheading "Flight," notes that "In a few California cases, it has been held that flight was sufficient to constitute a violation of a statute punishing a person who wilfully resists, delays, or obstructs a public officer in the discharge of any duty of his office." (*Id.*, at p. 1052.) The annotation cites *People v. Wilson* (1964) 224 Cal.App.2d 738 [37 Cal.Rptr. 42], *Kellett v. Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206], *In re Culver* (1968) 69 Cal.2d 898 [73 Cal.Rptr. 393, 447 P.2d 633], and *People v. Brooks* (1901) 131 Cal. 311 [63 P. 464].

In *People v. Wilson, supra*, 224 Cal.App.2d 738, it was held that one who fled from an officer after arrest and then procured a gun with which he held the officer at bay had violated the statute before he obtained the gun. (*Id.*, at pp. 743-744.) While *Wilson* was disapproved on other grounds in *Kellett v. Superior Court, supra*, 63 Cal.2d 822, *Kellett* did not invalidate the principle that flight may violate the statute. (63 Cal.2d 822, 827.) In fact, in *In re Culver, supra*, 69 Cal.2d 898, footnote 10 at page 905, the court stated: "[T]he court in *Kellett* nonetheless agreed that the flight from the officer constituted a separate offense from the procurement and threatened use of the gun." The *Culver* court. in that footnote continued, "Although most cases, like the instant case, involve a struggle prior to the flight, the use of force is not an element in the violation of section 148."

Our Supreme Court in *In re Culver* has made it unequivocally clear that under circumstances where a defendant has been lawfully arrested and escapes by flight before booking and imprisonment he is guilty of violating Penal Code section 148. *People v. Diaz* (1978) 22 Cal.3d 712, 717 [150 Cal.Rptr. 471, 586 P.2d 952], approved that holding. (See also *People v. Carroll* (1971) 133 Ill.App.2d 78 [272 N.E.2d 822].)

Appellant distinguishes the above cases on the primary ground that the defendants therein had been placed under arrest before flight. Appellant also expresses fear that any extension would create grounds for the potential arrest of every citizen who left the scene of a neighborhood fracas. However, we decide the case at bench on the facts of this case and extend it no further. Appellant appears to agree that if the of-

ficer had used his voice instead of his actions to make it clear appellant was being detained and that the officer wanted to talk to him there would have been cause to arrest under Penal Code section 148 if appellant then ran and hid. That is, appellant apparently contends that the officer must advise the individual that he is under arrest or that the officer wants to detain him. However, there is no reason to believe that appellant would have heeded a verbal warning with any more alacrity than he heeded the clear knowledge that the officer wanted to detain and talk with him.

The officer was not required to engage in an idle act. Appellant knew full well, and counsel conceded so at argument, that the officer's attention was centered on him and that the officer wanted to talk with him. When appellant saw the police car he slammed the trunk lid down and took off at a high step. As he left the scene he continued to look back nervously toward the officers as he hurried away. Finally, as the officers closed in, he broke into a run and eventually attempted to hide from the officers. Bystanders knew appellant was aware of the officers' desire and that appellant was attempting to escape from the officers. Officer Barron testified "...numerous subjects were pointing in the same direction, stating he was running from us." Under the ambient circumstances here involved and the totality of facts of this case, we believe that it was unequivocally clear to appellant that the object of the police's attention was appellant as an individual.

Since appellant knew he was going to be detained, and since the detention would clearly have been lawful, it was the officers' duty to cause the detention to be made. The actions of appellant (running and hiding) caused a delay in the performance of Officer Barron's duty. As Officer Barron personally perceived these events, he had probable cause to arrest for violation of Penal Code section 148, a misdemeanor.[1] As noted above, we have concluded that since the arrest was valid, there were no illegally seized items of evidence.

Two other points raised by appellant may be quickly disposed of.

---

[1]*People* v. *Wetzel* (1974) 11 Cal.3d 104 [113 Cal.Rptr. 32, 520 P.2d 416], cited by appellant, is not in point. There a person was arrested for violating Penal Code section 148 when the *only* conduct on the part of the defendant was a refusal to give consent for officers to enter and search an apartment. (*Id.*, at p. 109.) The case at bench is distinguishable because appellant actively impeded an officer in the performance of his duty. The defendant in *Wetzel* could refuse consent—but could not impede entry. Appellant could refuse to cooperate, but could not run and hide.

Appellant argues that the trial court improperly considered factors relating to him, as compared to the crime, and thereby erred in aggravating the sentence. *People* v. *Cheatham* (1979) 23 Cal.3d 829 [153 Cal.Rptr. 585, 591 P.2d 1237] holds contrary to appellant's contention.

Appellant contends that Penal Code sections 2900.5 and 4019 entitle him to good time/work time credits for presentence custody. The Supreme Court decision in *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874] holds that equal protection compels such conduct credits.

The judgment is affirmed. The Department of Corrections is directed to determine the presentence conduct credits to which appellant is entitled upon appellant's application for administrative determination of such credits.

Thompson, J.,* and Pierson, J.,† concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 12, 1980.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

†Assigned by the Chairperson of the Judicial Council.