Filed 6/10/13  In re Adrian C. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ADRIAN C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ADRIAN C.,<br><br>    Defendant and Appellant. | G047620<br><br>(Super. Ct. No. DL042766)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Jane Shade, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Respondent.

\*                    \*                    \*

Over a span of approximately four months, the People filed nine separate petitions alleging that defendant Adrian C. was a minor subject to being adjudged a ward of the juvenile court under section 602 of the Welfare and Institutions Code. After consolidating the eighth and ninth petitions for trial, and conducting a trial thereon, the court sustained all allegations of both petitions. On the eighth petition the court found minor had committed a first degree residential burglary (Pen. Code, §§ 459, 460, subd. (a); count 1),[1] and had obstructed a peace officer (§ 148, subd. (a)(1); count 2). As to the enhancement allegation attached to count 1 of the eighth petition, the court found a person not an accomplice was present during the commission of the residential burglary (§ 667.5, subd. (c)(21)). On the ninth petition the court found minor had committed petty theft (§§ 484, subd. (a), 488; count 1), and had obstructed a peace officer (§ 148, subd. (a)(1); count 2).

Following trial on petitions eight and nine, and pursuant to a disposition agreement, minor admitted he committed the offenses alleged in petitions one through seven as follows: Petition one, vandalism under $400 (§ 594, subds. (a), (b)(2)(A)), and possession of graffiti tools (§ 594.2, subd. (a)); petition two, vandalism under $400 (§ 594, subds. (a), (b)(2)(A)); petition three, unlawfully causing fire to the property of another (§ 452, subd (d)); petition four, battery (§ 242); petition five, receiving stolen property (§ 496, subd. (a), reduced to a misdemeanor pursuant to § 17, subd. (b)); and petition seven, possession of a weapon on school grounds (§ 526.10, subd. (a)(1)). The People dismissed the sixth petition and counts 2 and 3 of the fifth petition.

The court declared minor a ward of the court under Welfare and Institutions Code section 602, found the residential burglary was a felony (all other offenses were misdemeanors), and the maximum term of confinement for all offenses was eight years eight months. Minor was placed on supervised probation on condition he serve 180 days

---

[1] All undesignated statutory references are to the Penal Code.

2

in juvenile hall, with credit for 30 days previously served, together with many additional probation conditions.

Minor timely filed a notice of appeal, and we appointed counsel to represent him. Counsel did not argue against minor, but advised the court he was unable to find an issue to argue on minor's behalf. Minor was given 30 days to file written argument in his own behalf. That period has passed, and we have not received any communication from him. We have examined the entire record but have not found an arguable issue. (*People v. Wende* (1979) 25 Cal.3d 436.) Accordingly, we affirm the judgment.

FACTS

We recite the facts in the light most favorable to the judgment. (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)

Minor offered the following factual basis for his admissions. "In Orange County, I did the following: On or about 5/10/12, I maliciously and unlawfully defaced with graffiti a light pole belonging to Southern California Edison, and I unlawfully possessed an aerosol paint container with the intent to commit vandalism. On or about 3/20/12, I maliciously and unlawfully defaced with graffiti a fence belonging to McDonalds. On or about 5/16/12, I unlawfully and recklessly set fire to and burned the property of Bolsa Chica Wetlands. On or about 6/17/12, I willfully and unlawfully used force and violence upon the person of Noah C. On or about 9/4/12, I unlawfully possessed a watch that I knew had been stolen. On or about 9/12/12, I unlawfully brought and possessed a dirk or dagger upon the grounds of Marina High School."

At trial on the eighth and ninth petitions, Aubri Griffis testified she lived at a residential address in Huntington Beach with her three children. Shortly after 8:00 a.m. on Thursday, September 13, 2012, Griffis had returned home after dropping her children

off at school.[2]  As she pulled into her driveway she saw minor coming out of her backyard.  Minor was wearing a backpack, but Griffis did not see what was inside.  Minor explained he had been looking for Griffis's 14-year-old son.  That evening, Griffis noticed that a skateboard belonging to her five-year-old son was missing from their backyard.  She had last seen it the prior evening, September 12.

On Monday, September 17, Griffis noticed that a bicycle belonging to her 14-year-old son was missing from their backyard, and she called the police to report the missing bike.  She had last seen the bicycle on Friday, September 14.  The next day, September 18, Huntington Beach Police Officer Victoria Shroyer, who at that time was assigned as a juvenile officer, saw minor sitting at a picnic bench in a nearby park.  Officer Shroyer drove her patrol car over the curb directly toward the picnic bench.  Minor ran.  Shroyer yelled at minor to stop, and minor came back to talk with the officer.  Shroyer had learned earlier in the day that minor needed to be questioned about a couple of thefts.  The officer told minor she was going to arrest him.  Minor stood up and told Shroyer "he had weed on him and that he wasn't going to go to jail."  Shroyer responded that she had a job to do, at which point minor "took off running."  Shroyer told minor to come back, but he ran to a block wall.  Shroyer told minor she was not going to chase him, but minor jumped the wall.  Shroyer and two other officers did an area search for minor but were not able to locate him.

Meanwhile, Griffis had asked John McKinnon, a neighbor who lived across the street, to keep a lookout on her home.  She told McKinnon "the kid was homeless and he had been to the house before."  Then, on October 2, Griffis left the house at 7:45 a.m., to take her younger son to school.  When she returned, McKinnon approached her and told her that a "black male youth had entered her backyard through the north gate."  McKinnon had already called the police and was still on the phone with the police

---

[2]      All dates in this opinion will refer to the year 2012.

4

department.  Griffis "bolted out of her car and ran into her house" through the front door.  She "went straight to the back door into the backyard."  Seeing nobody in the backyard, Griffis reentered the house, and had "barely made it into the back door when [she] saw [minor] running from [her] hallway out through [her] living room to the front door."  She yelled for minor to stop, but he continued out the front door.  He was wearing a black backpack that appeared to be full.

Police officers responded to McKinnon's phone call.  Officer Huss spotted minor running on school grounds.  Minor "hopped a gate" into the rear yard of a residence and led the officers on a chase through the neighborhood.  He was again seen leaving a driveway heading toward the street.  Huss yelled at minor to stop.  Minor reversed course and headed back into the rear yards of the adjacent homes.  Eventually the officers succeeded in detaining minor.  He was not wearing a backpack, although when he was first observed on the school grounds he was carrying a "backpack type item."

Minor was advised of his Miranda rights at the police station and was questioned by a detective.  The detective asked minor whether he had ever taken anything from the Griffis residence.  Minor said "on one occasion he took a skateboard from the backyard area, and on a different occasion . . . he took a bicycle from the same backyard area."

DISCUSSION

To assist the court in its independent review of the record, minor's counsel has suggested we consider five potentially arguable issues.  (See *Anders v. California* (1967) 386 U.S. 738.)  We address each potential issue in turn.

*The Court Did Not Abuse its Discretion in Consolidating Petitions Eight and Nine*

The court granted the People's motion to consolidate the eighth and ninth petitions for trial. Minor's counsel suggests we consider whether the court's ruling constituted an abuse of discretion. It did not.

"An accusatory pleading may charge two or more different offenses connected together in their commission, or two or more different offenses of the same class of crimes. [Citation.] Offenses falling within this description, but charged in separate pleadings, may be consolidated for trial in order to promote judicial efficiency [citation], and a trial court's rulings on joinder are reviewed for abuse of discretion [citation]." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1074.) Here, the petitions alleged offenses of the same class and crimes connected together in their commission. The eighth petition charged minor with burglary of an inhabited dwelling "with the intent to commit larceny." The ninth petition charged minor with petty theft. Thus, as charged, the first count of each petition required proof that defendant intended to steal and did steal. "[W]e may reasonably conclude these offenses fall within the same class, in that they share the common characteristic of the wrongful taking of another's property." (*Id.* at p. 1075.) In addition, both petitions alleged the obstruction of a police officer. While obstruction of a police officer may not be of the same class as the theft-related offenses, the officer obstructions in this case were manifestly connected together in their commission. Minor twice ran from the officers seeking to interrogate him regarding a petty theft and a burglary of the *same* victims, perpetrated at the *same* location, some two weeks apart. Finally, the evidence in each petition would have been cross-admissible under Evidence Code section 1101, subdivision (b) to show a common plan, motive, and intent. "Cross-admissibility of evidence is sufficient . . . to deny severance," and thus to permit consolidation. (*People v. Ochoa* (2001) 26 Cal.4th 398, 423, abrogated on another point as noted in *People v. Prieto* (2003) 30 Cal.4th 226, 263, fn. 14.)

"[T]he trial court correctly recognized the law's preference for joinder and properly exercised its discretion" in consolidating the eighth and ninth petitions. (*People v. Manriquez* (2005) 37 Cal.4th 547, 575.)

*Substantial Evidence Supports the Finding that Minor Committed Burglary*

Minor's counsel suggests we review the sufficiency of the evidence to support the burglary finding. "Every person who enters any house . . . . with intent to commit grand or petit larceny . . . is guilty of burglary." (§ 459.) Griffis testified that minor was in her home without permission and ran out of the house with a backpack that appeared to be full. The backpack was never found, having been abandoned by minor during the lengthy chase. An inference of minor's intent to steal is easily drawn from minor's admitted recent theft of property from the Griffis backyard. This evidence was sufficient to support the finding of burglary, i.e., entry of the Griffis home with intent to steal.

*Substantial Evidence Supports the Finding that Minor Obstructed a Police Officer*

Minor's counsel also suggests we review the sufficiency of the evidence to support the two violations of section 148, subdivision (a)(1). "Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment" is guilty of a misdemeanor." (*Ibid.*) Officers Shroyer and Huss testified that on separate occasions each observed minor fleeing and attempting to escape after being contacted by uniformed officers and being told to stop. "The actions of [minor] (running and hiding) caused a delay in the performance of [the officers'] duty," and constituted sufficient evidence of a violation of section 148, subdivision (a). (*People v. Allen* (1980) 109 Cal.App.3d 981, 987.)

*The Evidence Was Sufficient to Establish Petty Theft*

Minor's counsel suggests we determine whether the evidence was sufficient to establish petty theft. It clearly was. Minor admitted to the detective that he took the skateboard and the bicycle from the backyard of the Griffis residence. Although he also claimed during the police interview to have given the items to a third party for the purpose of having them returned to their owner, the trier of fact was entitled to disbelieve minor's self serving statement, not made under oath.

*The Evidence Was Sufficient to Show the Presence of a Non-accomplice During the Burglary*

Finally, minor's counsel suggests we determine whether the evidence was sufficient to find true the enhancement allegation under section 667.5, subdivision (c)(21), viz, that a person other than an accomplice was present during the commission of a residential burglary. Counsel notes that Griffis did not enter her residence until *after* minor's initial entry. Apparently counsel is suggesting we determine whether it is arguable that Griffis was not present "during the burglary" because the burglary was complete upon minor's initial entry. This argument has been rejected by the courts in other contexts. For example, in *People v. Montoya* (1994) 7 Cal.4th 1027, our Supreme Court considered whether defendant could be subjected to aider and abettor liability where the evidence suggested he did not form the intent to assist the principal with a burglary until after the direct perpetrator had initially entered the residence. The *Montoya* court was thus called upon to decide the "question of the *duration* of the offense of burglary for the purpose of establishing liability as an aider and abettor." (*Id*. at p. 1039.) The Court concluded that "a person who, with the requisite knowledge and intent, aids the perpetrator, may be found liable on a theory of aiding and abetting if he or she formed the intent to commit, encourage, or facilitate the commission of a burglary *prior to the time the perpetrator finally departed from the structure*." (*Id*. at pp. 1050-

8

1051, italics added.) In reaching this result regarding the duration of a burglary, the court reasoned, "'"Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation — the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence."'" (*Id*. at p. 1042.) Further, "It is manifest that the increased danger to the personal safety of the occupant, and the increased risk of loss or damage to his or her property contemplated by the statutory proscription, do not terminate at the moment entry is accomplished, but rather continue while the perpetrator remains inside the structure. *Certainly*, *an absent occupant could return at any moment and be faced with the danger created by the prior entry*." (*Id*. at p. 1043, italics added.)

In *People v. Alvarado* (2001) 87 Cal.App.4th 178, the Court of Appeal reached an even broader conclusion when it interpreted section 667.61, subdivision (e)(2), which prescribes enhanced punishment for a rape committed "'during the commission of a burglary.'" (*Alvarado*, at p. 183.) There, the Court of Appeal held that, for purposes of section 667.61, subdivision (e)(2), the statutory phrase "'during the commission of a burglary' refers to that period of time between the burglar's initial entry with the requisite intent and the burglar's escape to a place of temporary safety." (*Alvarado*, at p. 191.)

Here, the increased risk to Griffis caused by minor's unlawful presence in her home was no less when she unexpectedly returned home and confronted minor, than it would have been had she had been present at the very moment of his entry. The evidence was sufficient to establish the enhancement under section 667.5, subdivision (c)(21).

9

*We Have Not Found an Arguable Issue*

Our review of the entire record has not disclosed the existence of any arguable issue.


DISPOSITION


The judgment is affirmed.


IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.