Filed 4/15/15  In re Dominique K. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re DOMINIQUE K., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | F069757 |
| Plaintiff and Respondent, | (Super. Ct. No. JW132159-00) |
| v. | |
| DOMINIQUE K. , | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from orders of the Superior Court of Kern County.  Peter A. Warmerdam, Judge.

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna, Doris Calandra and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]  Before Cornell, Acting P.J., Poochigian, J. and Franson, J.

On February 11, 2014, the Kern County District Attorney filed a juvenile wardship petition alleging that 15-year-old Dominique K. came within the delinquency jurisdiction of the juvenile court (Welf. & Inst. Code, § 602) because he willfully and unlawfully resisted a peace officer (Pen. Code, § 148, subd. (a)(1)).[1] The juvenile court found the allegation true, adjudged Dominique a ward of the juvenile court, and placed him on probation. On appeal, Dominique contends (1) the juvenile court abused its discretion when it denied his request for a continuance and (2) insufficient evidence supported the finding that he resisted arrest. We affirm the juvenile court's findings and orders.

### FACTUAL AND PROCEDURAL SUMMARY

On November 14, 2013, Officer Miller, who was in uniform and driving a marked car, was dispatched to a particular block of a particular street in response to a report that a female was striking a male with a baseball bat. Officer Miller had been given a description of a female in white pants who was extremely agitated. When he arrived, several people pointed at a vehicle and told him that the vehicle was involved. The vehicle pulled over upon his arrival. Miller stopped his car and got out.[2] He contacted the female driver and, because he believed she was involved in the reported crime, he told her to sit down on the curb. Initially, she did not comply, but he grabbed her arm and instructed her again to sit on the curb, and she then complied.

Dominique was also in the car. He got out and started yelling at Officer Miller to let go of his sister. Officer Miller told him to sit down next to the female. Dominique did not comply. Instead, he argued with Officer Miller, then began to walk away. Although Officer Miller had little information at that point regarding Dominique's involvement, he was conducting an investigation and Dominique had been in the same

---

[1] All statutory references are to the Penal Code unless otherwise noted.

[2] Officer Miller testified, "The vehicle had pulled over upon seeing me, so I didn't actually stop it. But the vehicle stopped and I stopped my car and got out."

2.

vehicle as the female suspect. Thus, he told Dominique to come back and sit down. Dominique, however, continued walking away. Officer Miller could not follow Dominique because he was holding the female who was a suspect in an assault with a deadly weapon, and he needed to speak with her to investigate the crime. Consequently, he called Officer Billdt for assistance.

Officer Billdt arrived, also in uniform. Officer Miller pointed out that Dominique was walking away from the location southbound on the west sidewalk. When Officer Billdt contacted Dominique, he told him to stop. Dominique ignored him and continued walking. Officer Billdt told him to sit down, but Dominique murmured something under his breath and continued walking. Officer Billdt approached him from behind because he did not know his involvement in the situation. When Officer Billdt attempted to place Dominique in a control hold, Dominique broke away and immediately spun and faced him. Officer Billdt regained the control hold and brought Dominique to the ground. At that point, Dominique was arrested for resisting an officer.

On February 11, 2014, the juvenile wardship petition was filed, alleging that Dominique resisted a peace officer (§ 148, subd. (a)(1).)

On February 14, 2014, Dominique denied the petition's allegation and the matter was set for a readiness hearing.

On February 27, 2014, at the initial hearing, the next hearing was set for March 13, 2014.

On March 13, 2014, at the readiness hearing, the court granted Dominique a continuance to March 26, 2014, "for further investigation."

On March 26, 2014, the court confirmed a jurisdictional hearing date of April 7, 2014.

On April 7, 2014, the court granted Dominique a second continuance to April 28, 2014, "for further investigation."

On April 28, 2014, the contested jurisdictional hearing was set to begin, but Dominique requested a third continuance before the People called their first witness, as follows:

> "[DOMINIQUE'S COUNSEL]: Your Honor, if I may. I have to make a record first. I do not have a witness, Reggie Leonard, who I believe would provide exculpatory evidence in this matter. There is an outstanding warrant for Mr. Leonard. He is not here this morning despite having assured my investigator he would be here. I would ask to continue to allow service of the warrant.
>
> "THE COURT: And that would be an open-ended, never-ending continuance. So unfortunately, based on the situation as presented, that request is denied."

At this point, the prosecutor called his first witness and the facts described above were elicited.

## DISCUSSION

I.     DENIAL OF CONTINUANCE

Dominique contends the trial court abused its discretion when it denied his request for a third continuance on April 28, 2014. He explains that the denial violated his right to due process and his right to present a defense. He argues that the matter had been continued only eight weeks at that point, and there was no reason to believe that Mr. Leonard's presence could not be secured in a reasonable period of time. He explains that because Mr. Leonard was his only witness, he was denied the ability to present a defense.

A trial court may grant a continuance in a criminal case only for good cause. (§ 1050, subd. (e).) "The decision whether to grant a continuance of a hearing to permit counsel to secure the presence of a witness rests in the sound discretion of the trial court. [Citations.] 'To establish good cause for a continuance, [Dominique] had the burden of showing that he had exercised due diligence to secure the witness's attendance, that the witness's expected testimony was material and not cumulative, that the testimony could

4.

be obtained within a reasonable time, and that the facts to which the witness would testify could not otherwise be proven.'" (*People v. Roybal* (1998) 19 Cal.4th 481, 504.)

Here, Dominique did not carry his burden to establish good cause. Although he described the expected testimony as "exculpatory," he made no offer of proof as to what the testimony specifically would include. The mere description of the expected testimony as "exculpatory" did not constitute an offer of proof. "An offer of proof … must be specific in indicating … the purpose and content of the testimony to be elicited." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1176.) For this reason, the trial court did not abuse its discretion when it denied Dominque's request for further continuance.

II.     SUFFICIENCY OF THE EVIDENCE

Dominique also contends the evidence was insufficient to support a finding that he resisted arrest because, he claims, the officers did not have a legal basis to detain him.

A person violates section 148, subdivision (a)(1) if he willfully resists, delays, or obstructs a peace officer engaged in the performance of his or her duties, and the person knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties. (*People v. Simons* (1996) 42 Cal.App.4th 1100, 1108-1109.)

"When an appellant asserts there is insufficient evidence to support the judgment, our review is circumscribed. [Citation.] We review the whole record most favorably to the judgment to determine whether there is substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof." (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 298.) Further, "[w]e presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs

5.

evidence nor reevaluates a witness's credibility." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

A detention occurs within the meaning of the Fourth Amendment when an officer, by means of physical force or show of authority, in some manner temporarily restrains the individual's liberty. (*People v. Zamudio* (2008) 43 Cal.4th 327, 341; *People v. Souza* (1994) 9 Cal.4th 224, 229.) Although an officer may approach an individual in a public place and ask questions if the person is willing to listen, the officer may detain the person only if the officer has a reasonable, articulable suspicion the detainee has been, currently is, or is about to be engaged in criminal activity. (*Terry v. Ohio* (1968) 392 U.S. 1, 21; see *In re Tony C.* (1978) 21 Cal.3d 888, 893.) To satisfy the requirement, the officer must "point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza, supra*, at p. 231; *United States v. Sokolow* (1989) 490 U.S. 1, 7 ["the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause"].)

The inferences from conduct required to establish a reasonable suspicion ultimately rest on commonsense judgment about human behavior, rather than on scientific studies. (*Illinois v. Wardlow* (2000) 528 U.S. 119, 125.) "The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal— to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.'" (*In re Tony C., supra*, 21 Cal.3d at p. 894.) But, of course, "an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith." (*Id.* at p. 893.)

6.

Here, articulable facts supported the detention. Dominique was in a car with the suspect in a recent assault with a deadly weapon. They were on the same block that the assault had occurred. It was unlikely that Dominique just happened to join up with the suspect in the previous minutes, unaware of the assault. And it was likely that the suspect was still armed with the bat, and very possible that Dominique was also armed. Dominique's aggressive and defiant behavior toward the police, together with his departure from the scene of the investigation and his continued refusal to stop, also suggested he was involved. In light of the totality of the circumstances, it was reasonable for the officers to suspect that Dominique might be involved in criminal activity. Thus, it was reasonable for the officers to briefly detain not only the suspect, but also Dominique, to investigate the reported assault. Because detention of Dominique was lawful, he had no right to resist the detention. When he did, the officers had probable cause to arrest him for resisting an officer in the lawful performance of his duties under section 148. (See *People v. Allen* (1980) 109 Cal.App.3d 981, 985-987.)

## DISPOSITION

The juvenile court's findings and orders are affirmed.