[Civ. No. 18959. First Dist., Div. One. May 5, 1961.]

GENEROSO SERVITO, Respondent, v. LYNCH AND SONS VAN AND STORAGE COMPANY (a Corporation) et al., Appellants.

800

Bledsoe, Smith, Cathcart, Johnson & Phelps, Robert A. Seligson, Partridge, O'Connell & Partridge and Philip R. Lawrence for Appellants.

M. Mitchell Bourquin and Stephen D. Maffini for Respondent.

BRAY, P. J.—In a personal injury action, plaintiff was awarded judgment against defendants, after jury verdict, of $15,000. All defendants appeal.

## QUESTIONS PRESENTED

1. Was plaintiff guilty of contributory negligence as a matter of law?
2. Sufficiency of evidence as to negligence of defendants.
3. Instructions.

## EVIDENCE

The accident occurred about 5 p. m. on Ellsworth Street in the Alemany Housing Project, San Francisco. One Manny Blum (not a defendant), as an employee of defendant Colonial Bakeries, was operating a panel truck in making door to door sales of bakery goods. He drove into the housing project, sounded his musical horn to attract customers, and double parked on the north side of Ellsworth, facing west. He claimed that there was no room at the curb. There was evidence to the contrary. The truck was double parked in such manner as to obstruct a considerable portion of the street. According to defendant Rovegno, the driver of defendant Lynch and Sons' moving van which struck plaintiff, the left side of the truck protruded over the center of the street, leaving less than half of the street for traffic coming toward the bakery truck. Blum opened the rear doors of the panel truck. They then protruded about a foot beyond the truck's sides. About five minutes later Rovegno drove the van easterly on the south side of the street.

There was evidence that Rovegno was familiar with this housing project and knew of the free use of the streets therein by pedestrians. He stated that he saw the bakery truck double parked, blocking more than half of the street, with its rear door open and with people clustered about. He knew from past experience that people would come out from behind such bakery trucks. Although he claimed to have done so, there was evidence that he did not sound his horn as he approached the bakery truck and that he drove within 12 inches of the truck as he went by. Although Rovegno claimed that plaintiff stepped or ran into the side of the van, there was evidence that plaintiff, as he started away from the truck, was hit by the front of the van.

Plaintiff had been visiting his cousin in a house on the south side of the street when he heard the musical horn of

the bakery truck. In about five minutes, he came out and crossed the street to the rear of the truck. At that time he looked right and left and there was no traffic on the street. He asked Blum for doughnuts and was informed there were none. He then turned, looked to his left, stepped to the open door at the rear of the truck, looked to his right (in the direction from which Rovegno came) and could not see any traffic because, he claimed, the truck's door obscured his view. He then started to take a second step while looking to his right when he saw the van only 4 feet away coming at him. It was right on him and he had no chance to back up.

1. *Contributory negligence.*

Defendants contend that the evidence established plaintiff's contributory negligence as a matter of law.

Rovegno testified that when he first saw plaintiff he was looking back and running towards the van. He was approximately 3 to 4 feet away from the van. Rovegno hollered and continued to hit his horn, but plaintiff ran into the left side of the van where the side mirror was attached to the door.

Witness Carollo testified that she was standing in back of the truck when the accident occurred. When she last saw plaintiff, prior to the accident, he was looking to his left. She never saw him look to his right at any time. She did not see the van. She heard the noise, glanced up and saw plaintiff in the air.

Section 21954 of the Vehicle Code (formerly § 562) provides: "(a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway. (b) The provisions of this section shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway."

A violation of this section would raise a presumption of negligence. However, it was a jury question, under the evidence, as to whether or not plaintiff was crossing the street at the time he was hit. The evidence would well support a finding that he had not yet started to cross but was merely stepping beyond the bakery truck to a position from which he could view oncoming traffic. In any event, the presumption is not conclusive but would be overcome if the jury were to find that plaintiff did what might reasonably be expected of a person of ordinary prudence who desired to

comply with the law, acting under similar circumstances. (See *Alarid* v. *Vanier* (1958), 50 Cal.2d 617, 622 [327 P.2d 897].) In *Webster* v. *Motor Parcel Delivery Co.* (1919), 41 Cal.App. 657 [183 P. 220], the court held that the actions of the plaintiff quite similar to those of plaintiff here, supported a finding that the plaintiff was not guilty of contributory negligence. "[T]he appellant insists that the evidence shows that the plaintiff stepped out suddenly from behind her automobile directly in the path of the approaching machine without looking and when it was too near to be stopped in time to avoid a collision. The plaintiff's testimony, however, in that regard, is that after having parked her own machine she stepped to the back of her car with the intention of looking northerly past the rear end of another car parked next to her own to see what, if anything, was coming before essaying to cross the street in a northwesterly direction to the store to which she was going; that as she was taking the step or two out which she had to take in order to see around the adjoining car she was struck down by the defendant's automobile which approached rapidly and without warning." (Pp. 660-661.)

In *Hill* v. *Wilson* (1954), 124 Cal.App.2d 472 [268 P.2d 748], the plaintiff was held to be guilty of contributory negligence (not as a matter of law, however), where the court found that defendant stepped out from the front of a bus into the path of an oncoming car without looking, and collided with its side—a situation entirely different from that here. However, the court recognized that under circumstances more similar to those in our case the plaintiff could be found not guilty of contributory negligence for it said, "If plaintiff's evidence had been to the effect that he merely stepped beyond the bus in order to see whether cars were approaching, and was unable to get back out of the way of a car coming at a wholly unexpected and excessive speed, there might have been some excuse for his conduct." (P. 475.)

Defendants cite a number of other cases, in all of which the plaintiffs either did not look or did not see the vehicle which was plainly visible, and walked into or in front of it. None of these cases are in point here.

Section 21954 does not prohibit a pedestrian from crossing outside a crosswalk. Nor does it grant to vehicles a monopoly over streets and highways. The right of a motorist to claim the right of way is not an absolute one. It follows that the right of way question is not decisive, particularly

where, as here, the pedestrian was struck at or near the center of the street. The real question of fact is whether or not due care was used. (See *Shipway* v. *Monise* (1943), 59 Cal. App.2d 565, 571 [139 P.2d 60].) Where there is evidence, as here, that the plaintiff used some care, the question of whether the care used was that of an ordinarily prudent person is a question of fact for the determination of the jury. Plaintiff was not attempting to beat the moving van across the street. He did not know of its presence, but was attempting to ascertain the situation when he was struck.

It is contended that plaintiff could have looked through the bakery truck and thence through its windshield and also that he could have observed traffic from behind the left door of the truck. Both plaintiff's and Mrs. Carollo's testimony was that traffic could not be seen from behind the truck. What this situation was, whether plaintiff looked in the direction from which the van was approaching, whether the point from which observation was made was prudently selected, whether plaintiff should have seen the van, etc., were all disputable questions of fact upon which reasonable minds might honestly differ, and were all questions for the jury.

Rovegno's testimony that plaintiff walked or ran into the side of the van is refuted by the severity of the impact, and the testimony of Mrs. Carollo and Blum to the effect that plaintiff was knocked into the air and rolled along the street ahead of the van.

2. *Negligence of Defendants.*

All defendants contend the evidence of negligence by them respectively was insufficient. However, there was substantial evidence to support the implied finding of the jury that all of them contributed proximately to plaintiff's injury.

As to defendants Lynch and Sons and its driver Rovegno, the evidence shows that Rovegno knew, as he approached the bakery truck, that people were then congregated on the sidewalk, that people in the housing units customarily used the street rather freely in making purchases from merchandise trucks, and had to go to the rear of such trucks to make purchases, and that the truck was double parked. Rovegno did not blow his horn. He testified that he came within a foot to a foot and a half of the bakery truck as he drove past. He said that he wanted to come closer to the bakery truck than to the parked cars on his right side. While Rovegno testified that his speed was only 10 to 15 miles per

hour as he approached the truck, the jury were not compelled to accept his testimony for the reason that the impact was so forceful that plaintiff was knocked up in the air in such a manner that his head struck the side mirror of the van, and the van traveled about 76 feet after the impact and about 102 feet after Rovegno saw plaintiff, until it came to rest. There was evidence that the van was over the center of the street, and that there was ample room for the van to pass the truck without coming so close. Although Rovegno was required by his operator's license to wear glasses, Mrs. Carollo testified that he was not wearing glasses when he got out of the truck immediately after the accident.

As to Colonial Bakeries, there was evidence that although there was ample parking space at the curb, the truck was double parked so as, with its open doors, to intrude over the center of the street. In *Thomson* v. *Bayless* (1944), 24 Cal.2d 543 [150 P.2d 413], the court stated: "It has recently been held that whether or not parking on the highway in violation of section 582 of the Vehicle Code constitutes a proximate cause of the accident where the driver of the car in motion might also have been negligent, is a question of fact for the jury if reasonable men can differ thereon." (Pp. 548-549.) This rule would also apply to a violation of section 588, subdivision (a) (now § 22502). *Arthur* v. *Santa Monica Dairy Co.* (1960), 183 Cal.App.2d 483 [6 Cal.Rptr. 808], is not in point. There, although the defendant's milk truck was double parked, the court held that the defendant's negligence in so parking did not contribute proximately to the accident, as the driver of the car which ran into the rear of the truck was looking for some 10 seconds for a cigarette on the floor of his car, and further held that had he, during any of that time, looked ahead he would have seen the truck and avoided the accident. In our case, the jury could, and undoubtedly did, find that the concurring negligence of both the truck driver and the van driver proximately contributed to the accident. Colonial's driver blew his horn to attract customers, well knowing that as the nearest intersection was about 500 feet away people would come into the street to his truck and would use the street to go back and forth from the rear thereof. The opened door obstructed their vision when they attempted to recross the street. The truck obstructed such a large part of the street that it was reasonably foreseeable that other vehicles would pass close by the

truck, and that possibly an approaching driver would fail to sound a horn or reduce his speed.

### 3. *Instructions.*

The court instructed in the language of section 588 (now § 22502) of the Vehicle Code, which requires parking at the curb except when loading or unloading merchandise or passengers; then stated that there were no other exceptions, and that "Deliberate *unlawful* stopping or parking . . . is not justifiable or excusable." (Emphasis added.) We see nothing wrong with this instruction, nor are we cited to any authority holding it to be wrong. The language "Deliberate unlawful stopping or parking" would not prevent a jury from excusing double parking if a reasonable excuse were presented. Moreover, the court instructed that a presumption arising from a violation of a statute could be controverted by other evidence and that a violation would be justified or excused if it appeared that the party did what might reasonably have been done or expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law.

The court gave several instructions on "right-of-way." Defendants claim that one of them used the language condemned in *Bryan* v. *Smalley* (1959), 166 Cal.App.2d 763, 764 [333 P.2d 387]. The court said, "Failure to yield to one to whom the law has given the right of way is negligence, unless circumstances resulting from causes beyond the control of the driver or pedestrian are such as to excuse and justify him in such failure, judging his conduct in the light of what reasonably might have been expected from a person of ordinary prudence." This instruction did not deal solely with the duty of plaintiff; it applied as well to the duty of defendant. In the Bryan case, however, the instruction dealt only with the duty of the plaintiff. Moreover, the language of the Bryan instruction is considerably different from that here. That instruction stated: " '. . . the evidence must support a finding that the violation resulted from causes or things beyond the control of the person charged with the violation [the plaintiff].' " (P. 765.) The instruction in our case, while it stated that to excuse the failure of a person to yield the right-of-way when required there must be "circumstances resulting from causes beyond the control of the driver or pedestrian," such statement is immediately modified by the statement "judging his conduct in the light of what reason-

ably might have been expected from a person of ordinary prudence." There was no such modification of the Bryan instruction. Here the court later instructed concerning the violation of any statute or ordinance: "Such violation is justified or excusable only if it appears or is shown that the party violating the law *did what might reasonably have been done or expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law.*" (Emphasis added.) Taking the instructions as a whole, it does not appear that they increased the burden of showing that the conduct of either party whom the jury might find guilty of violating any section of the Vehicle Code, including that requiring the yielding of the right-of-way, was excused. The instructions merely required the violator to show that his conduct was reasonable, and this has always been held to be the test.

██ "[T]he correct test is whether the person who has violated a statute has sustained the burden of showing that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." (*Alarid* v. *Vanier, supra,* 50 Cal.2d 617, 624.)

Interestingly enough, although now complaining about this instruction, defendant Colonial offered the very instruction held erroneous in *Alarid*. Obviously, under the rule of invited error, Colonial may not complain against a milder instruction given. (See 4 Cal.Jur.2d 423.) This rule of course does not apply to defendants Lynch and Sons and Rovegno.

██ The court, after stating that a violation of any statute proximately contributing to an injury constituted negligence, stated, "This means that if the evidence supports such a finding and you do find that a party did so conduct himself, it *requires* a presumption that such party was negligent." (Emphasis added.) The court followed this with the above quotation concerning the method of overcoming the presumption. There is no error in this statement, even though the instruction did not include the words in B.A.J.I. 149.1 and 149 (revised), "This presumption is not conclusive." Here the instruction shows that the presumption is not conclusive because it goes on to state how the presumption may be overcome. The court later instructed, "A presumption (unless declared by law to be conclusive) may be controverted by other evidence, direct or indirect; but unless controverted, the jury is bound to find according to the presumption." Thus,

the presumption is "required" unless controverted. Hence the word "requires" does not make the instruction erroneous. An unexcused violation of a statute does require the presumption.

Complaint is made of the fact that the court read two portions of section 671. The first part of the section requires that every vehicle be equipped with a horn, and the section then requires the horn to be used when reasonably necessary. It is contended that because there was no issue as to the van not being equipped with a horn, it was error to give the first portion of the section. It is obvious that that portion of the section was read merely preliminarily to the rest of the section, and that no possible harm could have resulted to defendant Lynch and Sons from its being read. There was a proper jury question as to whether the situation around the bakery truck known to Rovegno made necessary the sounding of the horn.

It is contended the court placed on the defendants the burden of proving their denials. This contention is based upon the instruction which stated that the affirmative of the issue must be proved by a preponderance of the evidence. "The affirmative here is upon the plaintiff as to all allegations in the complaint, and upon the defendants *as to all allegations in the answers.* Upon the respective parties, therefore, rests the burden of proof of such allegations." (Emphasis added.) In *Davis* v. *Franson* (1956), 141 Cal.App.2d 263, 273 [296 P.2d 600], the criticized instruction read that the burden of proving any "affirmative defenses" was on the defendant. The court upheld the instruction after stating that the jury are presumed " '. . . to possess ordinary intelligence and to understand the meaning and use of words in their common and ordinary application.' " that "The words 'affirmative defense' have a well-known meaning in accordance with the common usage of the English language." The same reasoning may be applied to the words "allegations in the answers." A similar instruction to the one complained of here was upheld in *Comstock* v. *Morse* (1930), 107 Cal.App. 71, 75 [290 P. 108].

In instructing as to section 562, subdivision (a), which requires a pedestrian crossing the street not at a crosswalk to yield the right of way to vehicles, the court stated that the section does not mean that a pedestrian "ventures upon a public street at his peril" nor does he have to "flee at sight of an approaching vehicle." This is a correct state-

ment of the law. (See *Jones* v. *Wray* (1959), 169 Cal.App.2d 372, 381 [337 P.2d 226].)

 Defendants, isolating a portion of the instructions from the whole, contend that the court in instructing on proximate cause, failed to mention the defense of contributory negligence. Applicable to this contention is, ''When the instructions are read in their entirety they state the law of the case fairly and clearly, and the failure to include in each one of them a statement of the rule concerning contributory negligence is not error.'' (*Watkins* v. *Nutting* (1941), 17 Cal.2d 490, 496 [110 P.2d 384].) Taking the instructions as a whole the jury were fully instructed on the burden of proof. There was no error in the instruction on concurring causes.

 The court, in instructing in terms broad enough to apply to both plaintiff and defendants, that intent is not an essential element of negligence, ended the instruction, ''It is sufficient if the wrongdoer did a negligent act from which the plaintiff directly and proximately suffered injuries.'' Defendants complain that the court did not instruct that intent is not an essential element of contributory negligence. There was no error in the instruction as given. If defendants desired a further instruction they should have offered or requested one.

 After quoting section 510 (basic speed law), the court said: ''The statutory permissive speed in a residential district is not a license to drive at such speed under all circumstances. The driver still remains bound not to drive his vehicle at a speed greater than is reasonable and prudent . . . and in no event at a speed which endangers the safety of persons or property.'' In view of the fact that no instruction was given as to what was the ''statutory permissive speed'' in the district, the first sentence above quoted would better not have been given. However, in view of both the provisions of section 510 and the sentence last above quoted, no prejudice could possibly have resulted to defendants.

The judgment is affirmed.

Tobriner, J., and Duniway, J., concurred.

Petitions for a rehearing were denied May 29, 1961.