Filed 3/29/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RALPH R. CHAMAGUA,<br><br>    Defendant and Appellant. | B290057<br><br>Los Angeles County<br>Super. Ct. No. KA117362 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jose A. Rodriguez, Commissioner. Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, and Steven E. Mercer, Acting Supervisor Deputy Attorney General, for Plaintiff and Respondent.

—————————————

The trial court denied Ralph R. Chamagua's motion to suppress evidence. The issue concerns a consensual encounter. We affirm.

I

At the suppression hearing, Sheriff's Deputy Brian Gorski testified he and his partner were patrolling in a marked patrol car about 10:45 p.m. on February 8, 2018. According to Gorski, Chamagua saw the patrol car, immediately changed direction, and quickly walked into an apartment complex driveway. At the same time, Gorski saw Chamagua put something in his pocket.

Gorski said his partner pulled their patrol car "just slightly" into the driveway, alongside Chamagua. The officers got out of their car. Gorski asked Chamagua, "Hey, how are you doing? What's your name? Do you got anything illegal on you?" Chamagua responded, "I have a pipe on me." Gorski searched Chamagua and found a pipe with traces of crystal methamphetamine.

Gorski asked, "Hey, you know, anything else illegal that you have on you?" Gorski said Chamagua "said, 'Yeah, I have a bunch of meth on me,' and he apologized." Gorski searched Chamagua's pocket and found a ping-pong-sized ball of crystal meth inside a transparent green container, like the type "commonly used as, like, a marijuana container . . . ." Gorski asked for Chamagua's identification, and Chamagua said it was in his wallet. In searching Chamagua's wallet, Gorski found "around $162" in denominations of ones, fives, tens, and twenties. Gorski read Chamagua his *Miranda* rights. Chamagua said he understood and he wanted to speak to the deputies without an attorney present.

2

Gorski asked what Chamagua was planning. Chamagua said "he was going to go party with some girls and smoke meth and that he had a problem with [methamphetamine]." When Gorski asked what Chamagua was doing with the large quantity of methamphetamine, Chamagua said he sells it to support his habit. Chamagua said he was going to sell methamphetamine to the people he was partying with later. Gorski arrested Chamagua.

Chamagua gave different versions of these events. On direct examination, he testified he lived at the apartment complex, and was unaware of the deputies until he was opening the complex's gate. At that point, Gorski called from behind him, "Hey, turn around. What do you got on you?" and then said, "What do you got in your hands? Let me see. Let me see your hands." After a brief exchange, Gorski asked if he had anything illegal in his pockets and he said that he had "a pipe, a meth pipe." He handed the pipe to the Gorski.

On cross-examination, Chamagua changed his account to a degree. He testified Gorski approached with his right hand toward the rear of Gorski's right hip, but that Gorski did not grab or try to hold onto him. In quick succession he testified: (1) Gorski took the pipe out of his pocket, (2) he handed Gorski the pipe, and (3) he did not remember what happened. He also said Gorski grabbed his wrists and jacket, and said, "What do you got there?" Chamagua said he had a pipe.

Chamagua contradicted himself when he testified the deputies called from behind him while he was opening the gate to the apartment complex, because he also testified the patrol car was between him and the gate.

The trial court denied the motion to suppress, "primarily on credibility grounds." Chamagua appealed.

## II

When reviewing a ruling on a motion to suppress, we review trial court's fact findings for substantial evidence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.) We accept factual inferences in favor of the trial court's ruling. (*Ibid.*) Where testimony conflicts, we accept the trial court's resolution of disputed facts, its evaluations of credibility, and the version of events most favorable to the prosecution. (*Ibid.*) We look only at the evidence in support of the successful party and draw all reasonable inferences in that side's favor. We disregard the contrary showing, as well as the weight of the evidence. (*Munoz v. Olin* (1979) 24 Cal.3d 629, 635–636.)

Applying those principles here, we accept Gorski's description of his encounter with Chamagua. We disregard Chamagua's conflicting testimony.

On the Fourth Amendment analysis, our review is independent. (*People v. Zamudio*, *supra*, 43 Cal.4th at p. 342.) Federal law controls this review. (*People v. Robles* (2000) 23 Cal.4th 789, 794.)

A consensual encounter between a police officer and a citizen does not implicate the Fourth Amendment. (*Florida v. Bostick* (1991) 501 U.S. 429, 434.) An encounter is consensual if a reasonable and innocent person would feel free to leave or to refuse to cooperate with the police. (*Id.* at pp. 434, 438.) We examine the circumstances of the whole encounter. (*Michigan v. Chesternut* (1988) 486 U.S. 567, 573.) Uncommunicated views of the officer and subjective beliefs of the citizen are irrelevant. (*People v. Zamudio*, *supra*, 43 Cal.4th at p. 341.)

4

In contrast to a consensual encounter, a seizure is when an officer restrains the individual's liberty, whether by means of physical force or by a show of authority. (*Brendlin v. California* (2007) 551 U.S. 249, 254.)

Accepting Gorski's version of events, Chamagua's encounter with the deputies was consensual to the point where he admitted to having an illegal pipe. The deputies did not use or threaten physical force. They did not command Chamagua to do anything. They simply asked questions.

Asking questions, including incriminating questions, does not turn an encounter into a detention. (See *Florida v. Bostick*, *supra*, 501 U.S. at p. 439.)

People targeted for police questioning rightly might believe themselves the object of official scrutiny. Such directed scrutiny, however, is not a detention. (*People v. Franklin* (1987) 192 Cal.App.3d 935, 940.)

Chamagua argues from *People v. Lopez* that Gorski's questions were sufficiently accusatory to turn the encounter into a detention. (*People v. Lopez* (1989) 212 Cal.App.3d 289, 292–293.) But that opinion held an encounter was consensual and was not a detention.

Chamagua cites *People v. Ramirez* to argue police blocked him from leaving the area. (*People v. Ramirez* (2006) 140 Cal.App.4th 849, 852.) *Ramirez* was different. An officer ordered Ramirez, who was walking, to "hold on" and to put his hands on his head. (*Ibid*.) When officers order you to halt, to stand still, and to assume a position typically associated with arrest, they show police authority. By contrast, this case has no police orders and no shows of authority. Gorski simply asked Chamagua questions.

5

Chamagua stresses the encounter was at night. Sundown does not remove the power of free consent.

Chamagua claims he was detained because the patrol car was parked between him and the gate to the apartment. The premise of this claim is one version of Chamagua's testimony, which the trial court rejected and which we disregard.

Gorski's subjective suspicion of Chamagua is irrelevant, as is Chamagua's subjective belief he could not leave. (*People v. Zamudio, supra,* 43 Cal.4th at p. 341.) The pertinent point is that a reasonable and innocent person in Chamagua's position would have felt free to go. (*Florida v. Bostick, supra,* 501 U.S. at p. 434.)

Once Chamagua admitted he possessed illegal contraband, Gorski had reasonable suspicion to detain and search him. Chamagua does not dispute that.

## DISPOSITION

The judgment is affirmed.

WILEY, J.

WE CONCUR:

GRIMES, Acting P.J.

ADAMS, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6